IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

INNOVATIVE METAL DESIGN, INC., an Oregon corporation,

Plaintiff,

v.

U.S. BANK NATIONAL ASSOCIATION, a Minnesota corporation; and HANADI ACHOUR, an individual,

Defendants.

Case No. 3:15-cv-00560-SB

**FINDINGS AND RECOMMENDATION**

**BECKERMAN, Magistrate Judge.**

Innovative Metal Design, Inc. ("IMD Inc." or "Plaintiff") brings this action against U.S. Bank National Association ("U.S. Bank") and one of its Oregon-based branch managers, Hanadi Achour ("Achour") (collectively, "Defendants"), alleging claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and negligence. Defendants now move to dismiss Plaintiff's complaint, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6),

for failure to state a claim upon which relief may be granted. Plaintiff concedes that its original complaint is deficient, and seeks leave to amend. The Court has original jurisdiction over Plaintiff's civil RICO claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's negligence claim pursuant to 28 U.S.C. § 1367(a). For the reasons explained below, the Court recommends that the district judge grant Defendants' motion to dismiss (ECF No. 11).[1]

**BACKGROUND**

The following facts, which the Court assumes to be true for purposes of the pending motion, are drawn from the allegations in Plaintiff's complaint, as supplemented by matters subject to judicial notice.

Defendant is a national banking association with its principal place of business in Minneapolis, Minnesota. (Compl. ¶ 5.) In April 2006, Innovative Metal Design, LLC ("IMD LLC"), an Oregon limited liability company, opened a business checking account at one of Defendant's Oregon branches. (*See* Compl. ¶ 7; Defs.' Req. Judicial Notice Ex. A-B.) Thereafter, IMD LLC's chief financial officer, Samer Hakim ("Hakim"), began passing large amounts of cash (e.g., multiple daily deposits of $9,000 or less, and occasional deposits in excess of $70,000), and fraudulent checks through IMD LLC's account, at Achour's U.S. Bank branch. (Compl. ¶¶ 8-9.)

Hakim's actions continued unabated until November 15, 2012, when an IMD LLC check bounced for insufficient funds. (Compl. ¶ 10.) Hakim was immediately recalled from a business trip in Las Vegas, Nevada, to explain the suspicious account activity. (Compl. ¶ 10.) Two days later, on

---

[1] Defendants also filed a request for judicial notice in connection with their motion to dismiss, which Plaintiff did not oppose. The Court grants Defendants' request for judicial notice (ECF No. 12).

November 17, 2012, Hakim destroyed all of the account records, before taking his own life. (Compl. ¶ 11.)

In March 2013, the Federal Bureau of Investigation ("FBI") allegedly uncovered evidence of money laundering during a raid on Achour's U.S. Bank branch. (Compl. ¶ 12.)[2] As a direct result of this money laundering activity, IMD LLC's credit rating was lowered to the point that it could no longer obtain corporate financing, or the bonds necessary to bid on certain lucrative projects. (Compl. ¶ 14.) IMD LLC was dissolved on December 30, 2013. (Defs.' Req. Judicial Notice. Ex. B.) On January 2, 2014, less than a week after IMD LLC was dissolved, Hamilton Budge Jr., acting as the incorporator and registered agent, filed articles of incorporation with the Oregon Secretary of State, establishing IMD Inc. as an Oregon corporation. (Defs.' Req. Judicial Notice Ex. A.)

On April 3, 2015, IMD Inc. filed the present action against Defendants, alleging violation of the civil RICO statute, and negligence. Defendants moved to dismiss the complaint on several grounds. In its response, IMD Inc. conceded that it did not allege sufficient facts to state a civil RICO or negligence claim, and requested leave to amend its complaint.

## LEGAL STANDARDS

The Ninth Circuit has "held that dismissal for failure to state a claim is 'proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'" *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In evaluating the sufficiency of a complaint's factual allegations, courts must "accept as true all well-pleaded allegations of material

---

[2] Plaintiff acknowledged at oral argument that it has not been able to determine if it was the FBI that raided the branch, or some other regulatory agency, or that it happened at all. (Mot. Dismiss Hr'g Tr. 14-15, Sept. 16, 2015.)

fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted). Courts "are not, however, required to accept as true allegations that contradict exhibits attached to the complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* Nor are courts required to accept as true allegations that simply recite the elements of a cause of action in a formulaic manner. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Ultimately, surviving a motion to dismiss requires that the complaint "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

## DISCUSSION

Defendants move to dismiss Plaintiff's complaint on four grounds. First, Defendants argue that Plaintiff lacks prudential standing because it is attempting to assert the legal rights and interests of a dissolved entity, IMD LLC. Second, Defendants contend that Plaintiff's civil RICO claim fails because U.S. Bank cannot be both a RICO defendant and a RICO "enterprise," Plaintiff has not alleged a "pattern" of "racketeering activity," and Plaintiff's allegations are conclusory. Third, Defendants argue that Plaintiff's negligence claim is barred by the applicable two-year statute of limitations and the economic loss rule. Fourth, Defendants argue that both of Plaintiff's claims fail because its allegations regarding lost profits do not rise to the requisite level of reasonable certainty. Plaintiff has conceded pleading deficiencies with respect to each of Defendants' arguments, but seeks leave to amend its complaint.

## A. Civil RICO Claim

### 1. Legal Standards

Plaintiff brought its civil RICO claim pursuant to 18 U.S.C. § 1962(c). Section 1962(c) provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). To state a claim under § 1962(c), a plaintiff must plausibly "allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). "'[R]acketeering activity is any act indictable under several provisions of Title 18 of the United States Code,'" *Sanford*, 625 F.3d at 557 (quoting *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004)), and includes the predicate act of money laundering, *Murillo-Prado v. Holder*, 735 F.3d 1152, 1157 (9th Cir. 2013). Where, as here, there are multiple defendants, a RICO plaintiff "must allege that each individual defendant engaged in a pattern of racketeering activity." *Phillips v. Lithia Motors, Inc.*, Civ. No. 03-3109-HO, 2006 WL 1113608, at *10 (D. Or. Apr. 27, 2006) (citations omitted).

In its complaint, Plaintiff alleges that both U.S. Bank and branch manager Achour engaged in racketeering activity, and that Achour committed the predicate act of money laundering, in violation of 18 U.S.C. § 1956. Specifically, Plaintiff alleges that Achour "committed the predicate acts of laundering a monetary instruments [sic] within the meaning of 18 U.S.C. §§ 1956, and 1961(1)" and that "[t]hese acts included knowingly promoted [sic] the carrying on of unlawful activity, and were designed in whole or in part to conceal the nature, location, source, and control

of the proceeds, and to avoid any and all transaction reporting requirements under State and Federal law." (Compl. ¶ 19.)

The crime of money laundering requires pleading and proving the following elements: (1) the defendant conducted or intended to conduct a financial transaction involving property that represented the proceeds from an unlawful activity, (2) the defendant knew that the property represented the proceeds from an unlawful activity, (3) the defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the unlawful activity, or to avoid a transaction reporting requirement under state or federal law, and (4) the defendant did something that constituted a substantial step toward committing the crime. 9th Cir. Model Crim. Jury Instr. 8.147 (2012). In order to state a civil RICO claim based on the predicate act of money laundering, Plaintiff must allege facts sufficient to support each of the statutory elements of its RICO claim, as well as each of the statutory elements of the predicate act of money laundering. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087 (11th Cir. 2004) (per curiam) (surviving a Rule 12(b)(6) motion to dismiss "requires that a plaintiff allege facts that support each statutory element of a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1)").

Plaintiff must also plead RICO predicate crimes with the specificity necessary to satisfy Rule 9(b). *See Desoto v. Condon*, 371 F. App'x 822, 824 (9th Cir. 2010) (upholding district court's conclusion that complaint failed to plead RICO predicate acts with the specificity necessary to satisfy Rule 9(b), and noting that the plaintiff failed to allege whether the defendant had the requisite intent to commit the predicate act of money laundering); *Best Deals on TV, Inc. v. Naveed*, No. 07-cv-1610, 2007 WL 2825652, at *7 (N.D. Cal. Sept. 26, 2007) ("Most courts have held that allegations of

money laundering must satisfy Rule 9(b)'s requirements because money laundering involves an element of fraud."). In this context, satisfying Rule 9(b)'s heightened pleading standard requires the plaintiff to plead, among other things, "the specific unlawful activity from which the monies were allegedly produced, the actions of each defendant in the money laundering scheme, [and] the specific intent of each defendant." *Lagos v. Monster Painting, Inc.*, No. 2:11-cv-00331, 2011 WL 6887116, at *5 (D. Nev. Dec. 29, 2011).

**2. Pleading Deficiencies**

Plaintiff does not dispute that the Court should grant Defendants' motion to dismiss its civil RICO claim. Plaintiff concedes that: (1) it failed to allege that IMD Inc. is the successor in interest to Innovative Metal Design LLC, so as to confer prudential standing; (2) it should have brought its claim pursuant to 18 U.S.C. § 1962(b), not (c); (3) its allegations regarding Achour's conduct are conclusory; (4) it failed to plead sufficiently the RICO predicate act of money laundering, and consequently failed to plead a "pattern" of "racketeering activity"; and (5) it failed to plead lost profits with sufficient specificity. (*See* Pl.'s Resp. Defs.' Mot. Dismiss 4-8); *see also Barsky v. Spiegel Accountancy Corp.*, No. 14-cv-04957, 2015 WL 580574, at *7 (N.D. Cal. Feb. 11, 2015) ("Plaintiff has not alleged any plausible racketeering activity. Because it is impossible to make a pattern out of nothing, these allegations are clearly insufficient to satisfy RICO's pattern requirement."). Accordingly, there is no dispute that Plaintiff's civil RICO claim must be dismissed.

**3. Leave to Amend**

The question remains whether the Court should grant Plaintiff leave to amend its civil RICO claim. A "district court may deny a plaintiff leave to amend if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Telesaurus*

*VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (citation omitted). Importantly, a plaintiff must possess a good faith factual basis for alleging the facts necessary to cure the deficiency, in order to comply with Rule 11. *See Johnson v. Hologic, Inc.*, No. 2:14-cv-794, 2014 WL 2581421, at *5 n.6 (E.D. Cal. June 9, 2014) ("Plaintiff is cautioned that if she chooses to file an amended complaint, she must have a good faith factual basis for the allegations asserted in that pleading.").

**a. Racketeering Activity**

Following Plaintiff's presentation at oral argument, it appears that the deficiencies in Plaintiff's RICO claim cannot be cured, because Plaintiff's theory of its civil RICO claim is fundamentally flawed.

The civil RICO statute "requires that a RICO plaintiff establish that a defendant *could be convicted* for violating any of its predicate statutes." *Rep. of Pan. v. BCCI Holdings*, 119 F.3d 935, 948 (11th Cir. 1997) (emphasis added). "To maintain a RICO action, at a minimum, the plaintiffs must allege sufficient facts with enough specificity to show probable cause that the predicate acts were committed." *In re Cascade Int'l Sec. Litig.*, 840 F.Supp. 1558, 1582 (S.D. Fla. 1993); *see also id.* at 1583 (holding that complaint failed to plead sufficient facts to infer defendant's knowledge of the alleged criminal activity). "In other words, the complaint must allege sufficient facts to support an indictment against the defendants as to the predicate acts as '[m]ere association with a RICO enterprise or even reckless disregard for the truth is not enough to establish RICO liability." *Id.* (citation omitted).

Plaintiff alleges that Defendants violated the federal money laundering statute (18 U.S.C. § 1956), a crime that requires that a defendant *knew* that the laundered property represented the proceeds from an unlawful activity. Plaintiff, however, has already acknowledged that U.S. Bank

did not possess such knowledge: "Based on information obtained by Plaintiff, Ms. Achour used her position inside U.S. Bank to *hide money laundering activity* of Mr. Hakim from both U.S. Bank itself, as well as from regulators." (Pl.'s Resp. Defs.' Mot. Dismiss 4) (emphasis added). Further, Plaintiff confirmed during oral argument that "the theory of liability with regard to the bank . . . [was] that they were extraordinarily remiss [in not discovering the laundering activity]," not that U.S. Bank had any knowledge of the criminal activity. (Mot. Dismiss Hr'g Tr. 9); (*see also* Mot. Dismiss Hr'g Tr. 24) ("[B]y virtue of [U.S. Bank's] failure at the corporate level to properly supervise and regulate and audit and maintain the type of regulatory scrutiny over their local branches that should have been in place and wasn't[,] that they're separately and independently liable, not necessarily vicariously liable for the conduct of the branch manager."). Plaintiff's theory of liability as to U.S. Bank is not cognizable under the civil RICO statute. *See First City Nat'l Bank v. FDIC*, 730 F. Supp. 501, 509 (E.D.N.Y. 1990) ("Courts have consistently held that an unwitting participant in a RICO enterprise is not within the ambit of the statute.").

Plaintiff's civil RICO claim against branch manager Achour is also flawed. Plaintiff alleges, in a conclusory fashion, that Achour "committed the predicate acts of laundering monetary instruments within the meaning of 18 U.S.C. § 1956," and that she "knowingly promoted the carrying on of unlawful activity[.]" (Compl. ¶ 19.) Plaintiff has acknowledged that its conclusory allegations against Achour do not meet Rule 9(b)'s heightened pleading standard, but asks for leave to amend its allegations. However, Plaintiff's representations during oral argument confirm that its theory of liability as to Achour is not viable.

Plaintiff acknowledged during oral argument that it is not aware of any direct evidence demonstrating that branch manager Achour knew about Hakim's alleged money laundering activity:

> THE COURT: . . . You don't have any documentation, testimony, or any other evidence that they actually knew what was going on?
>
> [PLAINTIFF'S COUNSEL]: That's correct. But it's accentuated by [the circumstantial evidence from financial experts who informed Plaintiff that] any branch manager that wasn't comatose would have seen this [suspicious activity]. Would have [been] alerted to this . . . on the second transaction, or the first transaction.

(Mot. Dismiss Hr'g Tr. 18.) Plaintiff represented at oral argument that it concluded that Achour knew about the money laundering based primarily on the opinion of "experts," who have opined that it would have been impossible for a branch manager not to have been alerted to Hakim's suspicious activity. (Mot. Dismiss Hr'g Tr. 13.) Plaintiff's theory appears to be that Achour *must have* or *should have* known about Hakim's money laundering activity, because a diligent banker would have noticed the suspicious activity, not that Achour actually knew about or was involved in the money laundering activity. These facts are insufficient to support a civil RICO claim against Achour. *See The Knit With v. Knitting Fever, Inc.*, Civ. Nos. 08-4221 & 08-4775, 2011 WL 1161716, at *8 (E.D. Pa. Mar. 30, 2011) (dismissing RICO claim and holding that "the allegations against [defendant] present nothing more than the 'sheer possibility' that she has acted unlawfully, while stopping short of showing plausibility of misconduct on her part"); *Friedlob v. Trustees of the Alpine Mut. Fund Trust*, 905 F. Supp. 843, 859 (D. Colo. 1995) ("[B]ecause only criminal violations suffice as predicate acts under RICO, plaintiff must allege that defendants committed the acts willfully or with actual knowledge of the illegal activities."); *Browning Ave. Realty Corp. v. Rosenshein*, 142 F.R.D. 85, 90 (S.D.N.Y. 1992) (denying motion to amend RICO claim where plaintiffs alleged only that defendants "blindly" accepted information, "should have known" about the alleged fraud, and "had to have been put on notice of the flim-flam[,]" but did not allege any "'specified, knowing, affirmative action'" by

defendants to assist the alleged fraudster) (citations omitted); *In re Cascade Int'l Sec. Litig.*, 840 F.Supp. at 1582-83 ("'Mere association with a RICO enterprise or even reckless disregard for the truth is not enough to establish RICO liability[.]'") (citation omitted).

When asked at oral argument about Achour's alleged knowledge of the money laundering activity, Plaintiff also responded that "there is a cultural and ethnic connection here between these folks" and that there existed a "community connection [that] hasn't been fully investigated or determined yet." (Mot. Dismiss Hr'g Tr. 11.) When pressed again about what *facts* support Plaintiff's theory that Achour knew that Hakim was laundering money, Plaintiff responded that "it may be mostly circumstantial, but these folks are connected ethnically, culturally . . . ." (Mot. Dismiss Hr'g Tr. 12.) Plaintiff's theory about Achour's criminal *mens rea* appears to be based, at least in part, on its allegation that both Hakim and Achour are of Middle Eastern descent, and that perhaps their shared ethnicity explains why Hakim engaged in banking activity at Achour's branch in Lake Oswego. Without more, Plaintiff's allegation is offensive and unfair, and offers no support for its allegation that Achour was aware of Hakim's alleged money laundering activity. Plaintiff has not presented a cognizable RICO claim against Achour.

In sum, Plaintiff has not alleged facts sufficient to support the statutory elements of its civil RICO claim, nor the statutory elements of the predicate act of money laundering. It appears that Plaintiff is not aware of any facts to support an allegation that either U.S. Bank or Achour had any knowledge of Hakim's alleged money laundering activity. That deficit is fatal to any claim arising under the civil RICO statute. *See Jalili v. Far East Nat'l Bank*, No. 12-5962, 2013 WL 5312716, at *3 (N.D. Cal. Sept. 23, 2013) ("All claims under § 1962 require proof of a 'pattern of racketeering activity[.]'").

**b. Other Pleading Deficiencies**

Plaintiff acknowledged in its written response to the motion to dismiss that its civil RICO claim under 18 U.S.C. § 1962(c) is deficient as to U.S. Bank, but sought leave to plead its claim against U.S. Bank under 18 U.S.C. § 1962(b). (*See* Pl.'s Resp. Defs.' Mot. Dismiss 4.) However, at oral argument, Plaintiff asked for leave to amend its complaint to both add a claim for a violation of § 1962(b) and to replead its claim under § 1962(c).

It is well settled that "a corporate defendant cannot be both the RICO person and the RICO enterprise[.]" *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992). Accordingly, if Plaintiff seeks to replead its RICO claim under 18 U.S.C. § 1962(c), it may not name U.S. Bank as a defendant and also allege that U.S. Bank is the enterprise. *See Shorter v. Metro. Life Ins. Co.*, 216 F. App'x 689, 692-93 (9th Cir. 2007) (upholding dismissal of RICO claim against MetLife, because MetLife's Disability Unit, a division of MetLife, was alleged to be the RICO enterprise, which meant that the plaintiff had not alleged a RICO enterprise separate from the RICO defendant).

Furthermore, if Plaintiff chooses instead to attempt to plead a civil RICO claim under § 1962(b), that section requires a plaintiff plausibly to allege, among other elements, that the RICO defendant "engaged in a pattern of racketeering activity *for the purpose of* acquiring an interest in or maintaining control of an enterprise." *Neiman Marcus Group, Inc. v. Dispatch Transp. Corp.*, No. 09-cv-6861, 2011 WL 1142922, at *8 (S.D.N.Y. Mar. 17, 2011) (emphasis added). At oral argument, Plaintiff was unable to articulate a cognizable theory of § 1962(b) liability. Its proffered theories that U.S. Bank knowingly assisted a client money launderer for the purpose of maintaining control of its banking association, or that Achour knowingly assisted a money launderer for the purpose of maintaining her employment at U.S. Bank, are implausible.

**c. Amended Complaint**

Plaintiff has publicly accused Achour and U.S. Bank of committing a federal crime. "The object of civil RICO is . . . to turn [victims] into prosecutors, 'private attorneys general,' dedicated to eliminating racketeering activity." *Rotella v. Wood*, 528 U.S. 549, 557 (2000) (citation omitted). Wearing a prosecutor's hat confers upon civil RICO plaintiffs an important responsibility, and one that plaintiffs and their counsel must not take lightly. *See Nippy, Inc. v. Pro Rok, Inc.*, 932 F. Supp. 41, 45 (D. P. R. 1996) (granting plaintiff's motion for voluntary dismissal of civil RICO claim, and holding that "[a] civil RICO lawsuit involves serious allegations of enormous consequences; its use should not be abused").

In *Gross v. Waywell*, 628 F. Supp. 2d 475, 479 (S.D.N.Y. 2009), the court discussed at great length the "formidable intricacies and pitfalls inherent in RICO litigation." That court examined the outcomes of civil RICO complaints, and concluded that "experience bears out that overwhelmingly the RICO plaintiffs' gilded vision of threefold damages and attorney's fees dispels into a mirage." *Id.* at 480. The court tried to explain the "bewildering disconnect" between "plaintiffs' visions of RICO awards" and "the dismal empirical reality borne out by RICO litigation[,]" and concluded in part that "the elements of a RICO action, the applicable pleading standards, and the rigorous evidentiary requirements that must be met to ultimately prevail in establishing a RICO claim are inadequately known or not property understood." *Id.* at 483. This Court agrees.

"Because the 'mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Doan v. Singh*, No. 1:13-cv-00531, 2013 WL 4648554, at *6 (E.D. Cal. Aug. 29, 2013) (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)).

Unfortunately here, the original complaint was "artlessly drafted and conspicuously deficient." *Figueroa Ruiz*, 896 F.2d at 648; *see also id.* (affirming dismissal of civil RICO claim with prejudice); *Gross*, 628 F. Supp. 2d at 479 ("RICO's enchantment, like the siren's song, has again drawn another crew of plaintiffs foundering against the rocks."); (*see also* Mot. Dismiss Hr'g Tr. 4) ("This complaint was drafted fairly quickly, with limited amount of information."). Although this Court finds that the flaws in Plaintiff's complaint and supporting legal theories are profound, it cannot conclude that it is impossible for Plaintiff to cure its pleading deficiencies. Therefore, the Court recommends that the district judge allow Plaintiff an opportunity to file an amended complaint, if Plaintiff is able to do so consistent with the holdings herein, and Rule 11.

**B.  Negligence Claim**

Plaintiff's remaining claim against Defendants is for common law negligence. Defendants move to dismiss Plaintiff's negligence claim as barred by the economic loss rule and the applicable statute of limitations.

**1.  Economic Loss Rule**

First, Defendants assert that Plaintiff's negligence claim is barred by the economic loss rule. Plaintiff acknowledges, as it must, that it cannot recover purely economic loss on its negligence claim here. (Pl.'s Resp. Defs.' Mot. Dismiss 8). Nevertheless, Plaintiff alleges that it has "suffered considerable noneconomic damages," and seeks leave to amend its complaint to include noneconomic damages. (*Id.*) Plaintiff should be given an opportunity to amend its claim for damages, if it suffered any noneconomic damages cognizable under Oregon law.

**2. Statute of Limitations**

Second, Defendants argue that Plaintiff's negligence claim, which is governed by the two-year statute of limitations set forth under OR. REV. STAT. § 12.110(1), is time-barred. Plaintiff appears to acknowledge that its negligence claim is time-barred, but responds that Defendants are estopped from asserting a statute of limitations defense because any delay in filing the complaint was the result of Plaintiff's reasonable reliance on U.S. Bank's reassuring communications and promises of assistance. (Pl.'s Resp. Defs.' Mot. Dismiss 7.)

To determine whether Defendants should be equitably estopped from asserting a state statute of limitations defense, the Court applies Oregon equitable estoppel principles. *See Philpott v. A.H. Robins Co., Inc.*, 710 F.2d 1422, 1425 (9th Cir. 1983) (applying Oregon law to assess the plaintiff's argument that the defendant should be equitably estopped from relying on a state statute of limitations); *see also N. Texas Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.*, --- F. Supp. 3d --- , 2015 WL 3461035, at *9 (N.D. Tex. Apr. 22, 2015) ("The Fifth Circuit has applied State law to determine whether a defendant 'should be equitably estopped from asserting its [State] statute of limitations defense.'") (citation omitted).

Under Oregon law, equitable estoppel has five elements:

> "[T]here must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; [and] (5) the other party must have been induced to act upon it[.]

*Day v. Advanced M & D Sales, Inc.*, 336 Or. 511, 518-19 (Or. 2004). Oregon equitable estoppel is thus similar to and not inconsistent with federal common law, as both focus on actions taken by the defendant to prevent the plaintiff from filing on time. *See Lukovsky v. City & Cnty. of S.F.*, 535 F.3d

1044, 1052 (9th Cir. 2008) (making the same comparison with respect to California equitable estoppel).

Here, Plaintiff has failed adequately to allege equitable estoppel. Generally, there are two situations in which Oregon courts have applied equitable estoppel to prevent reliance on a statute of limitations: (1) when the defendant "lulled the plaintiff, by affirmative inducement, into delaying the filing of a cause of action or, similarly, if he lulled the plaintiff into believing he had no cause of action against the defendant," and (2) "when there has been fraud on the part of a fiduciary in concealing material facts evincing a cause of action." *Philpott*, 710 F.2d at 1425. Absent from the complaint are any allegations that Defendants concealed any facts evincing a cause of action, or that U.S. Bank had a fiduciary duty to provide such information. *See Bromfield v. HSBC Bank Nev.*, No. 3:13–cv–00462–SI, 2013 WL 3929846, at *5 (D. Or. July 29, 2013) ("Traditionally, however, courts have found no fiduciary duty in the creditor-debtor relationship between a bank and its customer."). Furthermore, the complaint fails to allege that Defendants made any representations to Plaintiff sufficient to invoke estoppel by affirmative inducement. Plaintiff does not allege that Defendants attempted to lull Plaintiff into delaying the filing of a lawsuit, or into believing that it had no cause of action against Defendants. Rather, Plaintiff alleges only that U.S. Bank failed to follow through on its promise to assist in the reconstruction of IMD LLC's "corporate records of the [a]ccount which were destroyed by Mr. Hakim prior to his death." (Compl. ¶ 13.)

The Court concludes that Plaintiff has failed to plead equitable estoppel under Oregon law. *Cf. Lyden v. Goldberg*, 260 Or. 301, 307 (1971) (holding that complaint contained sufficient allegations "to raise the question as to whether the plaintiff was lulled into a sense of security, therefore preventing him from filing the action before the running of the statute of limitations"); *see*

*also Lukovsky*, 535 F.3d at 1047 & 1052 (upholding district court's rejection of equitable estoppel claim at motion to dismiss stage, because the plaintiffs did not allege any fraudulent concealment, nor did they allege any promise by which the defendant discouraged them from timely asserting their rights). If Plaintiff chooses to file an amended complaint, it must cure the deficiencies described above.

## CONCLUSION

For the reasons discussed herein, the Court recommends that the district judge grant Defendants' motion to dismiss (ECF No. 11), without prejudice to filing an amended complaint if Plaintiff is able to do so consistent with the Court's findings, and Rule 11.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 18th day of November, 2015.

STACIE F. BECKERMAN
United States Magistrate Judge